UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LARRY PORTER,

|                          | **DECISION** |
|---|---|

Plaintiff,

v.

GLEN S. GOORD,
DONALD SELSKY,
TODD, I-G,
MICHAEL P. McGINNIS,
RICHARD DONAHUE,
JAMES P. WAITE,
RICHARD W. STRONG,
SGT. GARY P. MORSE,
CONNIE DEMERRITT,
PAUL H. WEED,
PETER A. MASTRANTONIO, JR., and
JOEL W. ARMSTRONG,

Defendants.

**DECISION**
**and**
**ORDER**

**04-CV-0506F**

**(consent)**

_____

APPEARANCES:          LARRY PORTER, *Pro Se*
                                88A4542
                                Upstate Correctional Facility
                                P.O. Box 2001
                                Malone, New York 12953

                                ANDREW M. CUOMO
                                Attorney General, State of New York
                                Attorney for Defendants
                                DAVID J. STATE
                                Assistant Attorney General, of Counsel
                                Main Place Tower
                                Suite 300A
                                350 Main Street
                                Buffalo, New York 14202

## <u>JURISDICTION</u>

On March 20, 2008, the parties to this action consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  The matter is presently before the court on

Defendants' motion for summary judgment (Doc. No. 144), filed August 7, 2008.


## BACKGROUND

Plaintiff Larry Porter ("Plaintiff" or "Porter"), proceeding *pro se*, commenced this

civil rights action on July 13, 2004, while incarcerated at Southport Correctional Facility

("Southport" or "the correctional facility"), in Pine City, New York, alleging Defendants,

all employees of New York State Department of Correctional Services ("DOCS"),

including DOCS Commissioner Glenn S. Goord ("Goord"), DOCS Director of Special

Housing Unit ("SHU") Donald Selsky ("Selsky"), DOCS Inmate Grievance ("IG")

Investigator Todd , "I.G." ("Todd"), Southport Superintendent Michael P. McGinnis

("McGinnis"), DOCS Lieutenant and Hearing Officer Richard Donahue ("Donahue"),

DOCS Captain James P. Waite ("Waite"), DOCS Lieutenant Richard W. Strong

("Strong"), DOCS Sergeant Gary P. Morse ("Morse"), Registered Nurse Connie

Demeritt ("Nurse Demeritt"), Corrections Officer ("C.O.") Paul H. Weed ("Weed"), C.O.

Peter A. Mastrantonio, Jr. ("Mastrantonio"), and C.O. Joel W. Armstrong ("Armstrong"),

violated Plaintiff's Fourteenth Amendment due process rights in connection with a

December 24, 2002 altercation at Southport, and the related Tier III Superintendent's

Hearing ("the disciplinary hearing") held on January 9, 2003.  In a Memorandum and

Order filed October 15, 2004 (Doc. No. 4) ("October 15, 2004 Order), District Judge

John T. Elfvin dismissed for failure to state a claim all due process claims with

prejudice,[1] with the exception of those due process claims relative to the disciplinary hearing which were dismissed without prejudice and with leave to replead by November 13, 2004. October 15, 2004 Order at 7.

On November 3, 2004, Plaintiff filed an amended complaint. (Doc. No. 5) ("Amended Complaint"), naming as the sole Defendant Donahue whom Plaintiff alleged engaged in numerous violations of Plaintiff's due process rights with regard to the January 9, 2003 disciplinary hearing, yet Plaintiff failed to allege, as required, that as a result of the due process violations, he suffered any deprivation or punishment posing an "atypical and significant hardship" in relation to the ordinary conditions of his confinement. *Sandin v. Connor*, 515 U.S. 472, 484 (1995). October 15, 2004 Order at 5. On December 19, 2002, the undersigned granted Plaintiff's motion to file a further amended complaint (Doc. No. 32), which was filed that same date (Doc. No. 34) ("Second Amended Complaint"). The Second Amended Complaint names as Defendants Goord, Selsky, Todd, McGinnis, Waite, Strong, Morse, Weed, Mastrantonio, Armstrong, Donahue, and Demeritt (together, "Defendants"), and alleges claims for retaliation, excessive force, failure to protect, failure to provide adequate medical care, and due process violations, in violation of the First, Eighth and Fourteenth Amendments, but discontinues his earlier asserted claims for negligence and assault under New York common law. Second Amended Complaint ¶ 1.

---

[1] Judge Elfvin specifically dismissed with prejudice for failure to state a procedural due process claim were Plaintiff's claims that Defendants engaged in a conspiracy to deprive Plaintiff of his due process rights by (1) failing to conduct an investigation or to pursue a criminal complaint against the correctional officers involved in the assault: (2) failing to provide truthful information in relation to certain documents including an unusual incident report completed in connection with the assault; and (3) testifying falsely at the disciplinary hearing. October 15, 2004 Order at 5.

On August 7, 2008, Defendants filed the instant motion seeking summary judgment (Doc. No. 144) ("Defendants' motion"), supported by the Declaration of Assistant Attorney General David J. State ("State") (Doc. No. 145) ("State Declaration"), with attached exhibits A and B ("Defendants' Exh(s). __"), the Declaration of DOCS Commissioner Glenn S. Goord (Doc. No. 146) ("Goord Declaration"), a Statement of Undisputed Facts (Doc. No. 147) ("Defendants' Facts Statement"), and a Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 148) ("Defendants' Memorandum").  In opposition to Defendants' motion, Plaintiff filed on September 19, 2008, the Affidavit of Larry Porter (Doc. No. 151) ("Plaintiff's Affidavit"), a Memorandum of Law (Doc. No. 152) ("Plaintiff's Memorandum"), and a Statement of Undisputed Facts (Doc. No. 153) ("Plaintiff's Facts Statement").  In further support of summary judgment, Defendants filed on October 10, 2008, the Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment (Doc. No. 154) ("Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion is GRANTED.


## FACTS[2]

On December 24, 2002, at 8:15 A.M., Plaintiff, then incarcerated at Southport, was in his cell when Defendants Mastrantonio, Weed, Armstrong and Morse opened Plaintiff's cell door to remove Plaintiff for exercise.  Use of Force Report[3] at Bates No.

---

[2] Taken from the pleadings and motion papers filed in this action.

[3] Attached to Morse's Answers to Plaintiff's Interrogatories (Doc. No. 82).

0774.  After Plaintiff was cuffed and his cell door opened in preparation for the escort to Southport's exercise yard, Plaintiff kicked Mastrantonio in the left knee.  *Id*.  Defendants Mastrantonio and Armstrong pushed Plaintiff back into the cell and onto the bed, and Weed entered the cell to assist in gaining control of the "violently struggling" Plaintiff, who was biting, kicking and striking at staff.  Unusual Incident Report[4] at Bates No. 0770; Use of Force Memorandum[5] at Bates No. 0780.  Plaintiff kicked at Weed and Mastrantonio, broke a set of handcuffs and attempted to bite Mastrantonio, defying orders to stop fighting and resisting.  Use of Force Report at 0774; Disciplinary Hearing T.[6] at Bates No. 0815; Unusual Incident Report at Bates No. 0770; Use of Force Memorandum at Bates No. 0780.  To subdue Plaintiff, Weed struck Plaintiff with a baton, hitting him once in the right leg and twice in the left leg, finally gaining control of Plaintiff's right arm, while Armstrong, using his fist, struck Plaintiff three times in the fact to avoid being bitten, and twice in the torso. Use of Force Report at Bates No. 0777; Unusual Incident Report at Bates No. 0770; Use of Force Memorandum at Bates No. 0780; Disciplinary Hearing T. at Bates 0815.  Mastrantonio, Armstrong and Weed used body holds to gain control of Plaintiff while handcuffs, a waist chain and leg restraints were applied.  *Id*.

Plaintiff was then escorted to the A-Galley shower where Plaintiff initially refused to exit the shower and have his clothing removed by security to permit examination of

---

[4] Attached to McGinnis's Answers to Plaintiff's Interrogatories (Doc. No. 81).

[5] Attached to Weed's Answers to Plaintiff's Interrogatories (Doc. No. 86).

[6] References to "Disciplinary Hearing T." are to the transcript of the January 9, 2003 disciplinary hearing, Defendants' Exh. B.

his injuries by Southport's medical staff.  Use of Force Report at 0777; Unusual Incident Report at Bates No. 0775.  Porter eventually, at 10:30 A.M., was removed from the shower area, his clothing cut off, and examined by Nurse Demeritt of Southport's medical staff, who reported Plaintiff sustained a "tiny superficial cut on nose," left eye redness, four cuts on his left leg, and "obvious" left-side facial swelling.  Use of Force Report at Bates No. 0777; Unusual Incident Report at Bates No. 0771, 0775.

Nurse Demeritt also examined Armstrong, Mastrantonio, and Weed.  Unusual Incident Report at Bates No. 0770-71.   Armstrong had low back pain. *Id*.  Mastrantonio had pain in his right hand with small knuckle abrasions, and pain in his left knee. *Id*.  Weed had a small cut on his left knuckle. *Id*. at Bates No. 0771.  Despite their minor injuries, Armstrong, Mastrantonio and Weed all remained on duty, while Plaintiff was taken for further eye and facial examination to the emergency room where X-rays of his face were negative. *Id*. at 0771-75.

After the altercation, Plaintiff was charged on December 24, 2002, in an Inmate Misbehavior Report ("Misbehavior Report")[7] with violating numerous correctional facility rules, including DOCS Rules 100.11 (assault on staff), 104.11 (violent conduct), 107.10 (interference with employee), 106.10 (refusing a direct order), and 116.10 (destruction of state property).  A Tier III disciplinary hearing held regarding the Misbehavior Report commenced on January 9, 2003, and concluded on January 14, 2003.  Based on the Misbehavior Report, and the testimony of Armstrong, Mastrantonio, Morse and Weed, and review of the cell-block video tape that showed Plaintiff kicking and violently

---

[7] Attached to Mastrantonio's Answers to Plaintiff's Interrogatories (Doc. No. 88).

struggling against the correctional officers' attempt to restrain Plaintiff, refusing to obey direct orders, breaking handcuffs and attempting to bite a correctional office, Defendant Hearing Officer Donahue found Plaintiff guilty on all counts.  Disciplinary Hearing T. at Bates No. 0842.  Donahue sentenced Plaintiff to 24 months in SHU, 12 months recommended loss of good time credit, and 35 days of restricted diet, and ordered restitution in the amount of $ 17.50 for the broken handcuffs.  *Id*.

## DISCUSSION

**1.     Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322. Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Vague assertions supported only by self-serving statements in the nonmoving

party's affidavit are insufficient to defeat a properly supported summary judgment

motion. *Coniglio v. Highwood Services, Inc.*, 495 F.2d 1286, 1292 (2d Cir.), *cert.

denied*, 419 U.S. 1022 (1974). "The non-moving party may not rely on conclusory

assertions or unsubstantiated speculation [to defeat summary judgment]." *Scotto v.

Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, "the non-movant must produce

<u>specific</u> <u>facts</u> indicating that a genuine factual issue exists." *Wright v. Coughlin*, 132

F.3d 133, 137 (2d Cir. 1998) (underlining added). The ultimate inquiry on a summary

judgment motion is whether any reasonable jury could find the plaintiff's evidence meets

the requisite burden of proof. *Amnesty America v. Town of West Hartford*, 361 F.3d

113, 122-23 (2d Cir. 2004).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. §

1983, pursuant to which an individual may seek damages against any person who,

under color of state law, subjects such individual to the deprivation of any rights,

privileges, or immunities protected by the Constitution or laws of the United States. 42

U.S.C. § 1983. Section 1983, however, "'is not itself a source of a substantive rights,'

but merely provides 'a method for vindication of federal rights elsewhere conferred.'"

*Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137,

144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific

constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386,

394 (1989); and *Baker*, 443 U.S. at 140). In the instant case, the Complaint alleges

Defendants violated Plaintiff's under the First, Eighth and Fourteenth Amendments by

subjecting Plaintiff to excessive force on December 24, 2002, failing to intervene to

protect Plaintiff from the December 24, 2002 assault, delaying Plaintiff's medical treatment, denial of due process in connection with the disciplinary hearing, and failing to investigate the altercation.

Defendants argue in support of summary judgment that the Second Amended Complaint fails to state a claim for a Fourteenth Amendment procedural due process violation, Defendants' Memorandum at 4-5; eight of the eleven named Defendants were not personally involved in the claimed unlawful behavior, *id.* at 5-9; Plaintiff was not denied due process during the disciplinary hearing, *id.* at 9-14; Plaintiff has failed to establish an Eighth Amendment excessive force claim, *id.* at 14-20; and Defendants are qualifiedly immune from liability on all of Plaintiff's claims, *id.* at 20-21.

In opposition to summary judgment, Plaintiff argues that Defendants failed to take required photographs of Plaintiff's injuries and pushed Plaintiff back into his cell before assaulting him so that the assault would occur outside the view of the cell-block videocamera. Plaintiff's Memorandum ¶ 3. Plaintiff also maintains that photographs and videotapes of the altercation received from Defendants fail to show what Plaintiff thinks they should show. *Id.* In response to Defendants' argument that eight of the Defendants were not personally involved in the altercation, Plaintiff asserts that such Defendants must have known of the alleged constitutional deprivations that transpired on December 24, 2002 and the related disciplinary hearing. *Id.* Plaintiff also withdraws his Fourteenth Amendment due process claim regarding the disciplinary hearing. Plaintiff's Memorandum ¶ 2.

In further support of summary judgment, Defendants assert that in opposing summary judgment, Plaintiff fails to point to any genuine issue of material fact sufficient

to avoid summary judgment.  Defendants' Reply at 2-3.

**2.      Personal Involvement**

Seven of the eleven Defendants sued in the instant action are not alleged to

have been personally involved in the alleged constitutional deprivations, including

Defendants DOCS Commissioner Goord, Southport Superintendent McGinnis, SHU

Director Selsky, IG Investigator Todd, DOCS Captain Waite, DOCS Lieutenant Strong,

and DOCS Sergeant Morse, but rather, are alleged to have denied Plaintiff's written

requests for medical treatment, ignored complaints about a lack of due process with

regard to the disciplinary hearing, failed to commence a criminal investigation into the

circumstances of the December 24, 2002 altercation, and ignored Plaintiff's requests to

protect Plaintiff from the December 24, 2002 altercation, despite letters from Plaintiff

advising that Plaintiff feared such an assault.  Second Amended Complaint ¶ 1.  The

mere fact of supervisory authority, however, is insufficient to demonstrate liability, based

on a failure to supervise, under § 1983.  *Colon v. Coughlin,* 58 F. 3d 865, 874 (2d Cir.

1995).  Personal involvement of the defendant in an alleged constitutional deprivation is

a prerequisite to an award of damages under § 1983.  *Richardson v. Goord*, 347 F.3d

431, 435 (2d Cir. 2003) (holding to establish liability under § 1983, plaintiff must show

defendant was personally involved in the alleged constitutional violation).

Personal liability of a supervisor may be shown by evidence that (1) the

defendant participated directly in the alleged constitutional violation, (2) defendant, after

being informed of the constitutional violation by report or appeal, failed to remedy the

wrong, (3) defendant created a policy or custom under which unconstitutional practices

occurred, or allowed the continuation of such custom or policy, (4) defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon*, 58 F. 3d at 873. The mere receipt of a letter of complaint from an inmate, however, is insufficient to establish personal involvement and liability under § 1983. *Id*.; *see also Freeman v. Goord,* 2004 WL 2002927, at *5 (S.D.N.Y. Sep't. 8, 2004); *Gates v. Goord,* 2004 WL 1488405, at *9 (S.D.N.Y. July 1, 2004); *Greenwaldt v. Coughlin,* 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995). As such, Plaintiff's sending letters to Defendants Goord, McGinnis, Selsky, Todd, Waite, Strong and Morse, requesting commencement of a criminal investigation against other alleged wrongdoers will not support holding these Defendants vicariously liable based on any supervisory authority over the remaining Defendants on Plaintiff's claims.

Accordingly, Defendants' motion is GRANTED with regard to all claims asserted against Defendants Goord, McGinnis, and Selsky.

### 3. Fourteenth Amendment Procedural Due Process

As Plaintiff has withdrawn his Fourteenth Amendment procedural due process claim relative to his disciplinary hearing, Plaintiff's Memorandum ¶ 2, the court does not further address the claim, and summary judgment accordingly is GRANTED in Defendants' favor on this claim.

### 4. First Amendment Retaliation

In the Second Amended Complaint, Plaintiff asserts a generalized claim that Defendants violated his First Amendment rights, but pleads no supporting facts. Second Amended Complaint ¶ 1. In the First Amended Complaint, however, Plaintiff alleges that Defendants filed the December 24, 2002 Misbehavior Report, allegedly containing false charges, to retaliate against Plaintiff for filing inmate grievances in connection with other incidents preceding the December 24, 2002 altercation. First Amended Complaint ¶¶ 3-4. Because his most recent pleadings contain a vague allegation that Defendants falsely accused Plaintiff of head-butting, elbowing, and kicking correctional officers, Second Amended Complaint ¶ 9, and in light of the Supreme Court's instruction that pleadings of *pro se* plaintiffs are to be liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of complaint drafted by *pro se* plaintiff held to less stringent standards than formal pleadings drafted by attorneys), the court construes Plaintiff's Second Amended Complaint as alleging a claim for retaliation in violation of the First Amendment based on the filing of the December 24, 2002 Misbehavior Report.

For a plaintiff to succeed in a First Amendment retaliation claim, he must show that 1) the conduct cited as the cause for retaliation is protected; 2) the defendant took adverse action against the plaintiff; and 3) there was a causal connection between the protected conduct and the adverse action. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Courts are properly skeptical of prisoner retaliation claims as "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." " *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001),

*overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).    "Only

retaliatory conduct that would deter a similarly situated individual of ordinary firmness

from exercising his or her constitutional rights constitutes an adverse action for a claim

of retaliation."  *Davis*, 320 F.3d at 353 (internal quotation marks and citation omitted).  In

making this determination, courts are to "bear in mind" that "prisoners may be required

to tolerate more than average citizens, before a retaliatory action taken against them is

considered adverse."  *Dawes*, 239 F.3d at 493 (internal quotation marks and citations

omitted).  Plaintiff's claim that Defendants retaliated against Plaintiff for complaining

about Defendants' alleged violations of Plaintiff's constitutional rights by filing the

December 24, 2002 Misbehavior Report, sufficiently alleges conduct protected under

the First Amendment.  *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003) ("the filing

of prison grievances is a constitutionally protected activity").  *See Coleman v. Beale*, __

F.Supp.2d __, 2009 WL 1976044, * 4 (W.D.N.Y. July 8, 2009) (citing cases and

observing the inmate's filing of grievance as well as statements to prison official of

inmate's intention to file such grievance are "protected by First Amendment's guarantee

of the rights to free speech and to petition the government for a redress of grievances.").

The filing of a false misbehavior report does not constitute "a *per se* constitutional

violation actionable under § 1983" provided the inmate is afforded due process

protection through a disciplinary hearing on the misbehavior report.  *Freeman v.*

*Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("prison inmate has no constitutionally

guaranteed immunity from being falsely or wrongly accused of conduct which may result

in the deprivation of a protected liberty interest"), *cert. denied*, 485 U.S. 982 (1988).

"The key inquiry in assessing an allegation that an inmate has been found guilty of false

disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections [to dispute a false or incorrect charge] guaranteed by the Fourteenth Amendment." *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (bracketed material added). Summary judgment on a retaliation claim based on the filing of a false misbehavior report, however, is improper where an inmate either is not granted a hearing on the alleged false disciplinary charges, or is granted a disciplinary hearing, but is unfairly denied the right to rebut the charges by presenting evidence or calling witnesses in defense of the charges against him. *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995). As such, the filing of false misbehavior reports against Plaintiff cannot, by itself, support a retaliation claim.

Moreover, a thorough review of the disciplinary hearing transcript establishes that all those whom Plaintiff requested as witnesses testified at the disciplinary hearing, including Defendants Armstrong (Disciplinary Hearing T. at Bates No. 0811-14), Demeritt (Disciplinary Hearing T. at 0834-40), Mastrantonio (Disciplinary Hearing T. at 0820-26), Morse (Disciplinary Hearing T. at 0827-33), and Weed (Disciplinary Hearing T. at 0814-18). Plaintiff was only denied his request to call as a witness Plaintiff's Tier Assistance Officer who was not present and, thus, did not observe the altercation. Disciplinary Hearing T. at Bates No. 0807. *See Walker v. McClellan*, 126 F.3d 127, 129 (2d Cir. 1997) (stating that the refusal by inmate plaintiff requesting witnesses' testimony to explain the relevance of such testimony, "coupled with the absence of any defense offered for which the testimony of the witnesses might have provided confirmation," no clearly established right of the plaintiff was violated by denying the witness). Although Plaintiff maintains the witnesses gave false responses during their

disciplinary hearing testimony, First Amended Complaint ¶ 7, and that some of the witnesses were directed not to answer certain questions deemed irrelevant, *id.*, Plaintiff does not argue that he was denied the opportunity to present any evidence to rebut the charges, nor does the record support such a determination.

On this record, no reasonable jury could find that Defendants engaged in any adverse action against Plaintiff in connection with the disciplinary hearing. Plaintiff has thus failed to establish the second factor of a First Amendment retaliation claim with regard to the disciplinary hearing held in connection with the alleged false misbehavior report.

Summary judgment on Plaintiff's First Amendment retaliation claim is therefore GRANTED.

**5.      Eighth Amendment**

It is fundamental that the Eighth Amendment protects prisoners from "cruel and unusual punishment." U.S. CONST. 8th Amend. The Eighth Amendment "imposes duties on these [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 611 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Prisoners' rights under the Eighth Amendment have been construed as including freedom from excessive force and denial of adequate medical care, *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003), and protection from violence sought to be inflicted by other inmates, *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991).

Although Plaintiff alleges Eighth Amendment claims for excessive force, denial of

medical care, and failure to protect, Plaintiff fails to allege any facts establishing

personal involvement by any of the Defendants with regard to the denial of medical care

and failure to protect claims. *Richardson*, 347 F.3d at 435 (requiring personal

involvement in alleged constitutional violation to establish liability under § 1983). As

such, the court discusses only Plaintiff's excessive force claim.

Plaintiff claims Defendants Armstrong, Mastrantonio, and Weed used excessive

force against him during the December 24, 2002 altercation that occurred when such

Defendants attempted to remove Plaintiff from his cell for recreation. Second Amended

Complaint ¶¶ 1 and 6. In support of summary judgment, Defendants argue that the

evidence in the record establishes only that Defendants' use of force was necessary to

protect themselves from Plaintiff's violent conduct and to restore control over Plaintiff.

Defendants' Memorandum at 17.

In assessing an inmate's claims that prison officials subjected him to cruel and

unusual punishment by using excessive force, courts must determine whether the

prison officials acted "in a good-faith effort to maintain or restore [prison] discipline, or

maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)

(bracketed text added). An inmate plaintiff claiming that prison officials subjected him to

cruel and unusual punishment by use of excessive force must establish both an

objective and subjective component of the claim. *Romano v. Howarth*, 998 F.2d 101,

105 (2d cir. 1993).

Objectively, a § 1983 plaintiff must establish that the alleged deprivation is

sufficiently serious or harmful to reach constitutional dimensions. *Romano*, 998 F.S2d at

104, *see also Wilson v. Seiter*, 501 U.S. 294, 296 (1991). This objective component is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8. Thus, while a *de minimis* use of force will rarely suffice to state a constitutional claim, a plaintiff is not required to show that the application of force resulted in any serious injury. *Id*. at 9-10; *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (noting that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The subjective component of an Eighth Amendment excessive force claim requires that the defendants act malicious and with the intent to harm the inmate plaintiff. *Hudson*, 503 U.S. at 7; *Romano*, 998 F.2d at 105.

In the instant case, the record is devoid of any statement from Plaintiff denying the Unusual Incident Report's description of the December 24, 2002 use of force as necessary to gain physical control of Plaintiff after Plaintiff commenced a physical assault on the corrections officers involved in removing Plaintiff from his cell for his scheduled recreation. In particular, Plaintiff does not deny that after wrist restraints were applied to Plaintiff in preparation for escorting Plaintiff to his scheduled recreation, Plaintiff, upon exited his cell, kicked Mastrantonio in the left knee, as a result of which Mastrantonio and Weed guided Plaintiff back into the cell where Plaintiff attempted to kick Weed and to bite Mastrantonio, and broke his handcuffs. Use of Force Report at Bates No. 0774, 0777. Plaintiff does not deny that the cell-block videotape reviewed by Hearing Officer Donahue during the disciplinary hearing showed Plaintiff kicking and violently struggling against the correctional officers' attempt to restrain Plaintiff, refusing to obey direct orders, breaking handcuffs and attempting to bite a correctional office.

17

Disciplinary Hearing T. at Bates No. 0842. Nor does Plaintiff deny that Defendants

Weed and Mastrantonio struck Plaintiff with batons and Armstrong used body holds to

gain control of Plaintiff who continued to struggle and resist Defendants' attempts to

apply handcuffs, a waist chain, and leg irons. Use of Force Report at Bates No. 0774,

0777. *Compare Johnson v. Tedford*, 616 F.Supp.2d 321,327 (N.D.N.Y. 2007) (holding

no violation of Eighth Amendment based on excessive force where defendant

corrections officer, after inmate participated in an assault, pushed inmate and held

inmate against a wall to allow another corrections officer to remove inmate's handcuffs),

and *Jean-Laurent v. Wilkinson*, 540 F.Supp.2d 501, (S.D.N.Y. 2008) (holding

corrections officer's conduct, including striking inmate in face several times and verbally

abusing inmate who stood naked in stairwell surrounded by several corrections officers,

and in absence of any indication that inmate posed threat, exceeded corrections

officer's asserted good-faith effort to maintain order, discipline, and security within

prison based on fact of recent stabbing occurring within prison).

In sum, Plaintiff does not dispute that he instigated the December 24, 2002 use

of force incident, nor does Plaintiff argue that Defendants' use of force was in excess of

what was necessary to subdue Plaintiff. Plaintiff is thus unable to establish the

objective component of his excessive force claim, *i.e.*, that the force used against him

was other than "contextual and responsive to 'contemporary standards of decency.'"

*Hudson*, 503 U.S. at 8. As such, no reasonable jury could find that Defendants

Armstrong, Mastrantonio, or Weed acted in other than "a good-faith effort to maintain or

restore prison discipline," rather than "maliciously and sadistically to cause harm."

*Hudson*, 503 U.S. at 7.

Defendants' motion is GRANTED with regard to Plaintiff's Eighth Amendment excessive force claim.

**6.      Qualified Immunity**

Because the court is granting summary judgment on the merits of Plaintiff's claims, the court does not consider whether Defendants are qualifiedly immune from liability on such claims.

## CONCLUSION

Based on the foregoing, Defendants' motion (Doc. No. 148) is GRANTED.  The Clerk of the Court is directed to enter judgment in accordance with this Decision and Order and to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      July <u>30</u>, 2009
             Buffalo, New York

**Any appeal of this Decision and Order to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of judgment in accordance with Fed.R.App. 4(a)(1)(A) and (c).**